WADE *v.* WATSON.

1. The superior court, in the exercise of its equity jurisdiction, upon appropriate pleadings, has power to set aside a judgment of the Supreme Court which was obtained by fraud practiced upon the court in the procurement of the judgment by means of an entry of acknowledgment of service placed on the bill of exceptions by some one other than the defendant in error or his counsel, and without authority or consent of either of them.

2. Where a case which did not involve the mere exercise of the discretion of the judge in the grant or refusal of a temporary injunction, but was by consent on its final trial submitted to the judge to pass upon all questions of law and fact, an exception to his judgment in these words: "to which judgment of the court defendant then and there excepted and now excepts, and assigns the same as error," is too indefinite to present any question for consideration by this court or to furnish ground for reversing the judgment.

Argued May 6,—Decided December 23, 1909.

Petition. Before Judge Mitchell. Tift superior court. July 9, 1908.

Watson obtained a judgment against Wade in Tift superior court, which on exception was reversed. *Wade* v. *Watson,* 129 *Ga.* 614. Before the entry of the remittitur from the Supreme Court, Watson filed a petition to the superior court, setting forth objections to such entry, and praying for equitable relief. He alleged, that upon the bill of exceptions by which the case went to the Supreme Court was, what purported to be an acknowledgment of service to which

his name was signed by some person unknown to him and to his attorney at law; that he (Watson) did not sign the acknowledgment, nor was it signed in his presence, nor did he authorize or ratify the signature, nor was the same signed by either of his attorneys, nor was the bill of exceptions served upon him or his attorney in any manner provided by law; that the filing of the same, with such unauthorized acknowledgment of service, in the clerk's office, thereby causing it to be certified by the clerk and transmitted to the Supreme Court, and arguing the cause in that court by brief of his counsel, were part and parcel of a scheme and device adopted by Wade, "in the nature of, and amounting to, and was a legal fraud" upon said clerk, upon the Supreme Court, and upon Watson's rights, etc.; that neither Watson nor his attorneys had any legal notice that the cause was pending in the Supreme Court, nor did he appear therein by brief or counsel or otherwise; that he did not waive service of the bill of exceptions or of a copy thereof; that the Supreme Court was without jurisdiction to try Watson's traverse of the acknowledgment of service and the issues of fact pertaining to the fraud herein alleged, and he has no adequate remedy at law by which he can protect himself against the judgment of the Supreme Court. Waiving discovery, he prayed that the judgment of the Supreme Court be not made the judgment of the superior court, and that it be decreed to have been obtained by fraud and to be null and void; that his judgment against Wade be decreed to be valid and subsisting; that, if the judgment of the Supreme Court be held to be voidable only, it be decreed that he recover against Wade on his verdict upon which was based the judgment that was reversed, with interest and costs; that injunction be granted against the enforcement of the judgment of the Supreme Court; etc.

Wade demurred on the grounds, that, on the allegations of the petition, Watson was not entitled to the relief prayed for; that no cause of action to set aside a judgment appears, because the judgment of the Supreme Court has not been made the judgment of the superior court; that the superior court has no jurisdiction to set aside a judgment of the Supreme Court; and that Watson has a complete and adequate remedy as to the subject-matter of his petition. The demurrer was overruled, and Wade excepted. He answered, denying all the material allegations of the petition as to fraud, want of notice or service, etc. By consent of the parties all

issues of law and fact were passed on by the judge, without a jury, in open court at the July term, 1908. It appeared that upon the original bill of exceptions was an acknowledgment of service, signed with the name of Watson, not in his handwriting, but made by some one else without his knowledge or authority. He did not expressly waive service in writing. There was evidence that counsel for Wade had requested Watson to acknowledge service, which he consented to do; and these two thereupon went together to the office of the clerk of the superior court for the purpose of entering the acknowledgment on the original bill of exceptions, but by inadvertence the entry was signed by Watson on the copy of the bill of exceptions, without making any entry whatever on the original bill. Watson testified: "That is my name, and I signed my name to the acknowledgment and waiver of service on the copy of the bill of exceptions. I did not intend to acknowledge or waive service on the bill of exceptions; and when I signed my name to the copy of the bill of exceptions, acknowledging service and waiving service, I did not thereby intend to acknowledge service on the original." After the case came to the Supreme Court, Watson received a notice of the time when it would be heard. His counsel did not appear or file briefs in that court. After the judgment of reversal, the counsel filed a motion for rehearing, and a brief thereon.

The judge entered a decree in accordance with the prayers of the petition, in favor of the plaintiff; "to which judgment of the court defendant then and there excepted and now excepts, and assigns the same as error." There was no further exception or assignment of error, as to the finding of the judge on the facts, than that quoted.

*Smith & Foy* and *W. J. Wallace,* for plaintiff in error.

*Ellis & Ellis,* contra.

ATKINSON, J. 1. The exceptions to the judgment overruling the grounds of demurrer are without merit. The paper setting forth the objections to allowing the judgment of the Supreme Court to be made the judgment of the superior court will, for the sake of convenience, be called a petition. This petition as amended, which is the only thing to be considered in reviewing the judgment of the court in overruling the demurrer, did not intimate some facts that did appear from the evidence, viz.: that Watson had agreed to acknowledge service on the original bill of exceptions, and had

actually made an acknowledgment on the copy of the bill of exceptions, and had received notice from the clerk of the Supreme Court of the pendency of the case in the Supreme Court; or that, after the case was decided by the Supreme Court adversely to him, his counsel made a motion and argued the same before the Supreme Court for a rehearing of the case on its merits; but it is distinctly alleged in the petition, in effect, that Watson did not in any manner appear in the Supreme Court, or in any manner acknowledge or waive service or authorize any person to do so for him, and did not have notice that the case was pending in the Supreme Court. It is also alleged that the filing of the bill of exceptions with the unauthorized acknowledgment of service thereon in the office of the clerk of the superior court of Tift county caused the same to be certified by the clerk of the superior court and transmitted to the Supreme Court, and that counsel for plaintiff in error argued the case before the Supreme Court by brief, all of which was done "as part and parcel of a scheme and device adopted by the said Hardeman Wade in the nature of, and amounting to, and was a legal fraud upon the said clerk of Tift superior court, and upon the Supreme Court of Georgia, and upon petitioner and petitioner's rights, whereby the said Hardeman Wade sought to deprive petitioner of his property in his said judgment and verdict against the said Hardeman Wade without due process of law." The effect of the allegations quoted in the foregoing excerpt, considered with the other allegations of the petition, was to charge that the entry of acknowledgment of service on the original bill of exceptions was a forgery, and that the plaintiff in error, knowing the same to be such, was particeps criminis, and in order to get his case heard before the Supreme Court participated in the forgery and imposed on the clerk of the superior court by having him send a fictitious acknowledgment of service to the Supreme Court, and imposed on that court by having the case argued on its merits when there was no service of the bill of exceptions on the defendant in error, nor any genuine acknowledgment of service or waiver of service made by him. There was no special demurrer filed calling for a more specific allegation of fraud, or for more specific allegations charging the plaintiff in error or his counsel with the actual forgery, or with notice that the acknowledgment of service was not genuine when or before the case was argued before the Supreme Court, or before it

was certified by the clerk of the superior court. In the absence of any special demurrer upon these points, we think that the allegations were sufficient to charge fraud practiced in the procurement of the judgment of the Supreme Court. Without service or acknowledgment or waiver of service the Supreme Court would have been without jurisdiction. Civil Code, § 5369; *Atlanta Home Insurance Co.* v. *Tullis,* 99 *Ga.* 225 (25 S. E. 401). And if fraud existed in the matter of acknowledgment of service, it necessarily entered into the judgment which was rendered by the Supreme Court and which resulted from the fraud. In connection with what has been said on the subject of fraud in the procurement of a judgment, see *Hall* v. *Lockerman,* 127 *Ga.* 537 (56 S. E. 759). The question then is, can the judgment so procured in the Supreme Court be set aside, for fraud in its procurement, in the superior court, which, under the constitution and laws of this State, has complete jurisdiction in cases of equity? In the case of *Georgia, Florida & Alabama R. Co.* v. *Lasseter,* 122 *Ga.* 679 (51 S. E. 15), this court declined to dismiss a writ of error where the bill of exceptions and entry thereon showed jurisdiction of the Supreme Court. The decision of the court was founded upon the reasoning that the Supreme Court had no jurisdiction to hear contradictory evidence impeaching the verity of the record from the trial court, and was without authority to try a traverse to a return of a bill of exceptions, or refer to the trial court the issue of fact as to the truth or falsity of such return, and that the court was not only without jurisdiction to try such questions, but was also without jurisdiction to refer them to another court to be tried. But in the same case, on page 687, it was said: "Equity will enjoin a judgment fraudulently obtained." Civil Code, § 5369, provides: "The judgment of a court having no jurisdiction of the person and subject-matter, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it." § 3987 provides: "The judgment of a court of competent jurisdiction may be set aside by a decree, for fraud, accident, or mistake, or the acts of the adverse party, unmixed with the negligence or fault of the petitioner." § 3988 provides: "Equity will interfere to set aside a judgment of a court having jurisdiction only where the party had a good defense of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the

act of the adverse party, unmixed with fraud or negligence on his part." In the case of *Neal* v. *Boykin*, 129 *Ga.* 676 (59 S. E. 912, 121 Am. St. R. 237), it was said: "The judgment of a court of ordinary, appointing an administrator on the estate of a decedent, who was a non-resident of this State, and died in Florida, may be vacated in a proper proceeding in equity, instituted for the purpose of setting aside such judgment, on the ground that the party obtaining the same falsely and fraudulently represented to the court that the decedent had assets within the county where the application was made." In the case of *Kohn* v. *Lovett*, 43 *Ga.* 179, a bill of exceptions was dismissed in the Supreme Court. A remittitur from the Supreme Court affirming the judgment was made the judgment of the court below, and a fi. fa. had issued and was proceeding against the defendant in execution, who was the plaintiff in error named in the bill of exceptions which was dismissed. The plaintiff in error then filed a bill in the superior court, alleging facts to show merit in his cause; and alleging that the date of the certificate was not the real date on which the judge signed the bill of exceptions, that the judge failed to date it correctly "by mistake or oversight," and that this was unknown to his counsel until too late to have it corrected. The bill also averred facts going to show the absence of laches upon the part of the complainant or his counsel. In the answer to the bill facts were stated tending to show that there was no merit in the case, and that the failure to get the certificate properly dated at the time, or corrected in time, was owing to the laches of complainant's counsel; and the grant of an injunction was resisted because of these matters, and for the reason that the cause was res adjudicata. The injunction was denied, and exception was taken. In the opinion it was said: "We are of the opinion that the court erred in not retaining the injunction. Courts of equity are open to grant relief in cases of great injustice and wrong, arising from mistake without negligence and fault upon the part of counsel or parties. The dismissal of the case was owing to the misdate of the judge in his certificate. It was the duty of the judge to have put the correct date. The fault was not one for which the law should punish parties, and for which, under the rules, the case was dismissed. It was not beyond the reach of a court of equity to interpose and take jurisdiction of the parties and subject-matter, and if it appeared there was merit in the case,

and injustice would result from the act or mistake of the judge in the premises, it was the duty of a court of equity to enjoin the collection of the judgment and stay proceedings until a fair and full hearing upon the merits had been had." The case cited involved a judgment procured by mistake, while the case now under consideration involves one alleged to have been procured by fraud. Under the sections of the code above recited, fraud and mistake, in so far as they are now under consideration, are placed upon the same footing. The ruling cited is relevant to the present case principally because it holds that equity may interfere to prevent the enforcement of the judgment of another court, and even a judgment of the Supreme Court, where it appears that it was obtained by mistake unmixed with laches on the part of the party injuriously affected thereby. When it is considered that the power to correct on account of mistake also involves the power to correct on account of fraud, the ruling quoted leaves no room for further discussion upon the proposition that it is in the power of the superior court, in the exercise of its equity jurisdiction and upon sufficient equitable pleading, to set aside a judgment of the Supreme Court on account of fraud which resulted in the procurement of the judgment.

2. The judgment refusing to allow the judgment of the Supreme Court to be made the judgment of the superior court, and setting it aside, and enjoining its enforcement, was not the mere grant of an interlocutory injunction where the discretion of the judge entered into the decision, but purports to have been a final judgment rendered in term, disposing of the issues upon the law and the facts. It was rendered by the judge, who, by consent of the parties, passed upon all questions of law and fact; and no motion for a new trial was made, but the case came to this court by direct bill of exceptions. The case, therefore, does not belong to that class of cases in which a general assignment of error may be made to the decision, as in the case of *Kirkland* v. *Atlantic & Birmingham Ry. Co.,* 126 *Ga.* 246 (55 S. E. 23), in which it was held that a general assignment would be sufficient if it were an interlocutory injunction case which involved the exercise of the judge's discretion. The general rule will apply, that the error complained of must be plainly specified. *Mutual Building & Loan Association* v. *Glessner,* 99 *Ga.* 747 (27 S. E. 187); *Collins* v. *Carr,* 111 *Ga.* 867 (36 S. E. 959); *Mayor etc. of Brunswick* v. *Moore,* 74 *Ga.* 409; *Fidelity & Deposit*

*Company* v. *Anderson,* 102 *Ga.* 551 (28 S. E. 382) ; *Kimball* v. *Williams,* 108 *Ga.* 812 (33 S. E. 994) ; *Groover* v. *Inman,* 60 *Ga.* 406; *Wheeler* v. *Worley,* 110 *Ga.* 513 (35 S. E. 639) ; *Rodgers* v. *Black,* 99 *Ga.* 142 (25 S. E. 20) ; *Smith* v. *Marshall,* 127 *Ga.* 374 (56 S. E. 416) ; *Eastmore* v. *Bunkley,* 113 *Ga.* 637 (39 S. E. 105). The assignment of error upon the ruling of the court, above alluded to, is as follows: "After hearing and considering all the evidence in said cause, his honor, Robert G. Mitchell, judge, did render a judgment in favor of the plaintiff in the case at bar, to which judgment of the court defendant then and there excepted and now excepts and assigns the same as error." Under the decisions referred to, this assignment of error is too indefinite for consideration, and can not be the foundation for a reversal.

*Judgment affirmed. All the Justices concur.*