21725. AMERICAN AGRICULTURAL CHEMICAL
COMPANY *v.* SMITH, sheriff, *et al.*

DECIDED APRIL 29, 1932.

160

*T. M. Smith, Colquitt, Parker, Troutman & Arkwright, Mc-Donald & McDonald,* for plaintiff.

*Hal Lawson, Jones, Evins, Powers & Jones, Ralph Williams,* for defendants.

LUKE, J.   On December 14, 1927, the American Agricultural Chemical Company filed its petition in the city court of Atlanta against O. L. Smith, sheriff of Wilcox county, and the American Surety Company of New York, as principal and surety respectively in the sheriff's bond of said Smith, averring that defendants were indebted to plaintiff in the principal sum of $1,000, with interest thereon at the rate of eight per cent. per annum from July 1, 1926; that on September 25, 1926, the plaintiff delivered to sheriff Smith a mortgage fi. fa. which was levied on certain crops of one C. H. McCall on said date; that said property was subject to said fi. fa., and was worth more than the amount due thereon; and that after making the levy said sheriff breached said bond by permitting "said defendant [C. H. McCall], without legal right so to do, to take said property from his possession and sell the same." It appears from exhibit "A" of the petition that said bond was the usual sheriff's bond, binding said Smith, his deputies and jailors, to faithfully perform their duties of office.

When the case came on for trial on May 20, 1931, O. L. Smith for the first time offered to answer the action. Smith was allowed to file his answer at that time over the objection that "it was too late," and plaintiff filed exceptions pendente lite to the court's adverse ruling. If this case were controlled by the act of November 30, 1892, which provides that "all cases shall stand ready for trial at the first or return term, and the defendants shall file their defense on or before the first day of said term," the trial judge would have had no authority to allow Smith to file said answer. *Dodson Printers' Supply Co.* v. *Harris,* 114 *Ga.* 966 (41 S. E. 54). However, the unyielding rigidity of said act was modified by the act of December 13, 1902 (Ga. L. 1902, p. 117), which gave to the judge of the city court of Atlanta powers similar to those exercised by the judges of the superior courts in opening defaults. *Cheatham* v. *Brown-Catlett Furniture Co.,* 118 *Ga.* 420 (45 S. E. 399). All that appears from the record in the case at bar in regard to the question of allowing said answer to be filed is that the suit was filed on December 4, 1927; that the answer was allowed filed over ob-

jection when the case came on for trial on May 20, 1931; and that the objection was that it was too late to file an answer at that term. It does not appear that Smith had ever been served with process or that he had acknowledged or waived such service. "A legal return of service is essential in a civil action to give the court jurisdiction of the person of the defendant; and until such return has been made, the defendant is not required to plead to the merits." *Callaway* v. *Douglasville College,* 99 *Ga.* 623 (25 S. E. 850). In our opinion, the mere fact that the answer was allowed to be filed several terms after suit was brought is not sufficient reason for this court to hold that the trial judge erred in permitting it to be so filed.

After O. L. Smith's answer was filed, plaintiff made an oral motion to strike sub-paragraph (a) of paragraph 4 thereof, because the facts therein set out constituted no defense to the action. The part of the answer referred to is as follows: "Plaintiffs were not damaged at all because (a) the levy was illegal because the foreclosure was void, the affidavit to foreclose plaintiff's mortgage having been made before one Spence as notary public, and he was then and there the agent of plaintiff to collect the mortgage." The court overruled said motion to strike, and exceptions pendente lite were taken to that ruling.

On May 20, 1931, American Surety Company filed an amendment to its answer, of which paragraph (c) was as follows: "That the plaintiff, American Agricultural Chemical Company, has not been damaged, by reason of the fact that the levy of the mortgage fi. fa. was illegal, null, and void, and of no force and effect, and that a sale under and by virtue thereof could not have been sustained in law, by reason of the fact that the affidavit of foreclosure, on which said execution was predicated, was made by H. A. Hodges, as attorney at law for said plaintiff, before Olin L. Spence as notary public, and that said Olin L. Spence was at said time the agent of said plaintiff for the purpose of collecting the debt secured by said mortgage, or bill of sale." When said amendment was filed the plaintiff's motion to strike said paragraph because it set forth no defense to the plaintiff's action was overruled by the court, and exceptions pendente lite to that ruling were duly taken.

We next quote from the first ground of the amendment to the motion for a new trial: "After a jury had been empanelled and sworn to try said case, and both plaintiff and defendants announced

ready for trial, said case was tried on admissions made in open court by the plaintiff and the defendants as follows: 'The defendant admitted a prima facie case for the plaintiff, and admitted that everything alleged in plaintiff's petition was the truth. The plaintiff admitted that one O. L. Spence, who was the notary public before whom H. A. Hodges as attorney at law for the plaintiff, the American Agricultural Chemical Company, made an affidavit to foreclose the chattel mortgage in the superior court of Wilcox County, Georgia, against C. H. McCall, and which foreclosure proceedings are referred to and set out as an exhibit to plaintiff's petition, was the agent and representative of the American Agricultural Chemical Company charged with the duty of collecting the note secured by said mortgage, and had said chattel mortgage in his possession for the purpose of collecting the same, but that said O. L. Spence was not a stockholder, and was not a director, and was not an officer of the said American Agricultural Chemical Company, and that said O. L. Spence was not interested in a pecuniary manner in the collection of said mortgage made by C. H. McCall, and which was foreclosed by the affidavit of said Hodges as such attorney before said O. L. Spence as such notary public.' This admission on the part of the plaintiff was also admitted by the defendants to be true in so far as the same affected O. L. Spence. Whereupon, the trial judge directed a verdict in favor of the defendants; to which ruling on the part of the court movant then and there excepted, and now excepts and assigns the same as error. . ."

We quote here from the brief of counsel for plaintiff in error: "Briefly stated, the question before the Court of Appeals is: 'Is a chattel-mortgage foreclosure absolutely null and void in Georgia when the affidavit of foreclosure is made before a notary public who, at said time, is an agent of the plaintiff corporation foreclosing said mortgage, but which said notary public has no pecuniary interest in the paper foreclosed and is not an officer, stockholder, or director of said plaintiff corporation?'" Counsel for defendants in error indicate by their brief that they likewise consider the controlling question in the case the legality of the mortgage-foreclosure proceedings in the light of the "agreed statement of facts." Therefore we shall do likewise.

We shall first refer to the decision mainly relied on by counsel for defendants in error—the decision in the case of *Wilkowski* v.

*Halle,* 37 *Ga.* 679 (95 Am. D. 374), the second headnote of which is: "A notary public who is an attorney at law can not qualify a party to an affidavit for an attachment, and take the bond, and issue the attachment, in a case where he is employed." In reaching the foregoing conclusion the court said: "Shall the plaintiff's attorney be the judge as to the sufficiency of the bond to protect the opposite party and as to the solvency of the surety? Is not this, at least, a quasi judicial proceeding? The officer, taking the affidavit, is in duty bound to take the bond, to decide upon its sufficiency, its legality, and its solvency."

We quote further from the decision in the *Wilkowski* case: "Again, by sec. 443 Rev. Code, attorneys have certain powers therein specified, 'but they can not take affidavits required of their clients, unless specifically permitted by law.'" (It may be observed that the provision of the Revised Code referred to is identical with that of the Civil Code of 1910, § 4955.) After citing several authorities, the court said: "Read in the light thus reflected, we think the Code excludes a notary public from taking the affidavit of his client and issuing the attachment in a case where he is employed as an attorney at law." The court further stated that the same principle had been applied to the taking of depositions, and that on page 433 of *Glanton* v. *Griggs,* 5 *Ga.* 429, it was said: "Commissioners, like jurors, should be free from all impressions and influences. For the time being they discharge judicial functions."

We quote next from *Nichols* v. *Hampton,* 46 *Ga.* 253 (6), another case relied on by defendants in error: "An affidavit, probating a mortgage, taken before the attorney of the mortgagee, who is a notary public, is not a legal affidavit, and a mortgage recorded on such probate is not legally recorded." The court further says (p. 258): "We are clear, under the decision of this court in the case of *Wilkowski* v. *Halle,* 37 *Ga.* 678, this affidavit of probate, if taken, as was contended, before the plaintiff's attorney, was not a legal probate. The court in that case decides that section 443, Irwin's Revised Code, prohibits an attorney who is a notary from administering any oath required by law of his client. . ."

Another case cited by defendants in error is that of *Moultrie Lumber Co.* v. *Jenkins,* 121 *Ga.* 721 (49 S. E. 678). There the plaintiff contended that a counter-affidavit in a proceeding to foreclose a laborer's lien was void because sworn to and subscribed before Y,

L. Watson, of counsel for the defendant, he being then and there attorney for the Moultrie Lumber Company. The holding that said counter-affidavit was void was based squarely upon Civil Code (1910), § 4955, which expressly declares that "attorneys can not take affidavits required of their clients, unless specifically permitted by law." The holding in *Tucker* v. *Roberts,* 151 *Ga.* 753 (108 S. E. 222), that a processioner is disqualified because of relationship within the prohibited degree is based squarely upon the premise that the functions of processioners are judicial in character. See page 762 of the decision.

In *King* v. *Thompson,* 59 *Ga.* 380 (3), the court held: "A director and stockholder in a bank is not competent to act as a judicial officer in the proceedings necessary to obtain an attachment in a case in which the bank is interested." The *Wilkowski* case, supra, is cited as authority for this holding. On page 385 of the *King* case the court says: "It is true that we have held that a person interested may do a mere ministerial act, as taking an affidavit in a distress warrant for rent, where no judgment as to the conditions precedent to the issue of the warrant were called into requisition (see *Thornton* v. *Wilson,* 55 *Ga.* 607); but this is a different matter, requiring the exercise of judgment and discretion in taking the bond," etc., etc.

We next quote from *Welsh* v. *Lewis,* 71 *Ga.* 387: "1. That a mortgage on personalty was attested only by a brother-in-law of the mortgagee, who was a notary public, does not render it illegal, or its record bad. (*a*) This case differs from that in 46 *Ga.* 253. The rule as to an attorney rests on a special statute (Code, sec. 408), and will not be extended by implication."

In *Goodrich* v. *Williams,* 50 *Ga.* 425, the court held that "A mortgage is not illegally foreclosed because the affidavit of the mortgagee for foreclosure is made before a notary public who is also an employee in the office of the attorney at law, employed by the mortgagee to foreclose the same." In the decision the court said: *"We will not extend the prohibition of section 408 of the Code of 1873 beyond its terms, especially in reference to a mere ministerial act, such as an affidavit to foreclose."* (Italics ours.) In *Thornton* v. *Wilson,* 55 *Ga.* 607 (1), it was said: "A distress warrant issued by a magistrate who was the son of the plaintiff is not void. The act is *purely ministerial.* No lien is created until a levy." (Italics

ours.) In *Blount* v. *Wells,* 55 *Ga.* 283, the court held: "An execution from the county court, issued by the clerk de facto and signed by him officially, is not illegal because the clerk practiced law at the time, and was one of the attorneys of record for the plaintiff in execution." In *Kirkland* v. *Ferris,* 145 *Ga.* 93 (88 S. E. 680), the court held: "A notary public is not disqualified from administering an oath to his father and attesting an affidavit made by the latter." In *Citizens Trust Co.* v. *Butler,* 152 *Ga.* 80 (108 S. E. 468), the court held: "In this State a secretary of a banking corporation who is not a stockholder therein, or otherwise beneficially or pecuniarily interested in the transaction, is not disqualified from attesting, as an official witness, a deed of conveyance in which the corporation is the grantee; there being no express statute forbidding such officer to act." To the same effect is *Farmers Warehouse Co.* v. *First National Bank of Milledgeville,* 152 *Ga.* 262 (109 S. E. 900). In *Southern Iron & Equipment Co.* v. *Voyles,* 138 *Ga.* 258 (75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369), the court held: "1. A notary public is disqualified from attesting a deed or bill of sale, so as to entitle it to record, if he is pecuniarily or beneficially interested in the transaction. 2. A stockholder of a corporation bears such financial relation to it that he is disqualified, on account of interest, from attesting as a notary a deed or bill of sale to which the corporation is a party."

It thus appears that interest is the determining factor in such cases. In this connection see *First Nat. Bank of Cartersville* v. *State Mutual Life Ins. Co.,* 163 *Ga.* 718 (137 S. E. 53, 51 A. L. R. 1524), where the court, after quoting at length from the last three cases referred to, held that "it is not every possible pecuniary gain or relation that would disqualify an officer to attest a paper as an official witness," and concluded the opinion in these words: "The rule announced and applied in *So. Iron & Equipment Co.* v. *Voyles,* supra, should not be extended to this case." The nature of the case last quoted from sufficiently appears from the following headnote: "Under the charter and by-laws of a mutual life insurance corporation duly chartered on the legal-reserve basis, without capital stock, and a policy of life insurance issued by it, now under consideration, the policyholder did not acquire a vested unconditional legal interest in the corporation or its business or an unconditional equitable interest in the assets of the company, though he did acquire a legal

interest in the business and an equitable interest in the assets, both interests being determinable upon failure to pay the stipulated premiums upon his policy. The policyholder, being also a public officer authorized to attest mortgages and deeds to secure debt, was not, on account of pecuniary interest and his relation to the company, disqualified to attest a deed purporting to convey land as security for a loan in which the insurance company was the grantee."

Because the question for decision appears not to have been directly passed upon in this State, and because of counsel's ably presented contention that under common-law principles, applicable in Georgia, the agent to collect the note in the instant case was disqualified from taking the affidavit for foreclosure of the paper securing the note, we have gone somewhat at length into decisions tending to shed light upon the question under consideration. Those decisions speak for themselves. The notary in the case at bar was not an attorney at law, and does not come within the inhibition of the Civil Code (1910), § 4955, which was deemed controlling in several of the cases cited. He was performing a function involving no discretion—no judicial or even quasi-judicial conduct. His act was purely ministerial. Moreover, it is agreed that he was not a stockholder, director, or officer of American Agricultural Chemical Company, and "was not interested in a pecuniary manner in the collection of said mortgage."

Neither the *Wilkowski* case, nor the *Nichols* case, nor the *Moultrie Lumber Company* case is, in our opinion, authority for the court's ruling in the case at bar; and we are reinforced in this conclusion by subsequent decisions interpreting and differentiating those cases. Our conclusion is that the trial judge erred in directing a verdict for the defendants.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*